UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAESHELE PRUITT,

        Plaintiff,         CIVIL ACTION NO. 14-cv-11230

v.         DISTRICT JUDGE PAUL D. BORMAN

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

### REPORT AND RECOMMENDATION

Plaintiff Raeshele Pruitt seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 15). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

### I. RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be GRANTED IN PART and Defendant's Motion for Summary Judgment (docket no. 15) be DENIED. It is further recommended that this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration of Plaintiff's human

immunodeficiency virus (HIV) as an impairment under steps two through five of the sequential evaluation process.

## II. PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income in January 2009, alleging that she has been disabled since January 1, 2007, due to depression, severe anemia, HIV, anxiety, and panic attacks. (TR 55-56, 163-72, 229.) The Social Security Administration denied Plaintiff's claims on September 28, 2009, and Plaintiff requested a *de novo* hearing. (TR 55-56, 84-86.) On September 27, 2010, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Cora Williams. (TR 555-75.) In a December 16, 2010 decision, ALJ Williams found that Plaintiff was not entitled to benefits because she was capable of performing her past relevant work. (TR 60-68.) The Appeals Council reviewed and vacated ALJ Williams's decision on the basis that it did not contain an adequate evaluation of the opinions of Plaintiff's therapist, Donna S. Townsley, LLPC, CAAC, and psychiatrist, Dr. Lisa Knysz, Psy.D., and because ALJ Williams gave significant weight to the residual functional capacity (RFC) assessment of the single decision maker. (TR 73.) The Appeals Council remanded Plaintiff's case to an ALJ with instructions to resolve the above-cited issues by obtaining additional evidence concerning Plaintiff's impairments, giving further consideration to Plaintiff's RFC during the entire relevant period, and providing rationale with specific references to record evidence in support of assessed limitations. (TR 74.)

On remand, Plaintiff appeared with a representative and testified at a hearing before ALJ Martha M. Gasparovich on September 27, 2012. (TR 29-54.) In a November 13, 2012 decision, ALJ Gasparovich found that Plaintiff was not entitled to benefits because she was capable of

performing a significant number of jobs in the national economy. (TR 12-24.) The Appeals Council declined to review the ALJ's decision (TR 1-7), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

### III. HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff sets forth the procedural history of this matter as well as a brief, subjective summary of her physical and mental limitations. (Docket no. 13 at 8-10.) The ALJ set out a detailed, factual recitation with regard to Plaintiff's hearing testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in her decision. (TR 15-22, 23.) Defendant provides a chronological history of Plaintiff's medical and psychological evidence in her brief. (Docket no. 15 at 4-9.) There are no material inconsistencies between these accounts of the record; therefore, the undersigned will incorporate these factual recitations by reference. Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2007, and that Plaintiff suffered from the following severe impairments: chronic microcytic anemia, iron deficiency anemia, menorrhagia, uterine fibroids, obesity, umbilical hernia, neuropathy, major depressive disorder, and a panic disorder. (TR 14.) The ALJ also found that Plaintiff's HIV and hypertension were non-severe impairments. (TR 15.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the

severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 15-17.) The ALJ then found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), as the claimant is able to stand and walk no more than six hours in an eight-hour workday, and lift no more than 20 pounds occasionally and 10 pounds frequently. The claimant is unable to push or pull with the lower extremities. The claimant may only occasionally squat, crawl, kneel, climb, balance, bend, or stoop. The claimant is limited to simple, routine, one to three step tasks, in a low-stress environment, being defined as no quick decision making and no quick judgment on the job. The claimant should have no interaction with the public, and only occasional interaction with co-workers. The claimant requires a non-production pace setting.

(TR 17-22.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 23-24.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from January 1, 2007, through the date of the ALJ's decision. (TR 24.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*

4

*v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on

5

"the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed for an award of benefits under sentence four because (1) "[t]he substantial evidence on the record demonstrates that controlling weight was not given to the objective medical evidence;" (2) "[t]he RFC determination by the ALJ did not accurately portray [Plaintiff's] physical and mental impairments and nonexertional

6

limitations;" and (3) "[t]he ALJ erred in evaluating [Plaintiff's] severe impairments of HIV and anemia at steps two and three of the sequential disability process." (Docket no. 13 at 11-24.)

### 1. The ALJ's Assessment of Plaintiff's HIV Impairment

Plaintiff contends that the ALJ (1) erred in finding that Plaintiff's HIV was not a severe impairment in step two of the sequential evaluation process; (2) failed to evaluate whether Plaintiff's HIV, either individually or in combination with other impairments, met or medically equaled the severity of one of the listed impairments in step three of the sequential evaluation process; and (3) did not consider the side effects of Plaintiff's HIV medication in formulating Plaintiff's RFC. (Docket no. 13 at 14, 18, 19-23.)

A severe impairment or combination of impairments is one which significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). The step-two severity analysis is simply a threshold determination. It is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony*, 266 F. App'x at 457. Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe

7

impairments at step two does not constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

In reaching her step-two determination, the ALJ considered and discussed the evidence pertaining to Plaintiff's HIV and found that it was a non-severe impairment because it was generally stable and asymptomatic with medical compliance. (TR 15.) At the same time, the ALJ found that Plaintiff's chronic microcytic anemia, iron deficiency anemia, menorrhagia, uterine fibroids, obesity, umbilical hernia, neuropathy, major depressive disorder, and panic disorder constituted severe impairments and that Plaintiff's hypertension was a non-severe impairment. (TR 14, 15.) Accordingly, because the ALJ found that Plaintiff had several severe impairments, any error committed by the ALJ in finding Plaintiff's HIV to be a non-severe impairment is harmless if the ALJ considered Plaintiff's HIV throughout the remainder of the disability determination analysis.

Plaintiff argues that the ALJ failed to consider her HIV under Listings 14.00 and 14.08 and failed to consider it in combination with her anemia, neuropathy, and severe gynecological problems. (Docket no. 13 at 20-22.) At the third step of the sequential evaluation process, a claimant will be deemed presumptively disabled and eligible for benefits if his impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "When considering presumptive disability at Step Three, an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). A claimant must satisfy all of the criteria to meet a listing, or have impairments which

are medically equivalent to or equal in severity and duration to the criteria of a listed impairment. *Id.*; *Rabbers v. Comm'r,* 582 F.3d 647, 653 (6th Cir. 2009). It is the claimant's burden to demonstrate that she meets or equals a listed impairment at the third step of the sequential evaluation process. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").

Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (TR 15.) With regard to Plaintiff's physical impairments, the ALJ explained that she considered Listings 7.02 and 11.14 and reasoned that [t]he medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (TR 15.) The ALJ then briefly discussed the effects that Plaintiff's obesity may have had on her other impairments and thoroughly analyzed Plaintiff's mental impairments under Listings 12.04 and 12.06. (TR 15-17.)

It is evident that the ALJ did not directly discuss Plaintiff's HIV impairment at step three. Certainly, "[t]he mere failure to discuss every single impairment under the step three analysis is not a procedural error." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). Nevertheless, in reaching the conclusion that Plaintiff's physical impairments did not meet or medically equal a listed impairment, the ALJ did not cite to any record evidence or offer any analysis with regard to how she reached such a conclusion. Notably, the ALJ makes no reference to the listings relevant to HIV or to either of Plaintiff's non-severe impairments in her step-three analysis. Without an adequate discussion from the ALJ, it is not clear whether she considered Plaintiff's HIV at step three of the sequential evaluation process. *See Christephore*,

2012 WL 2274328, at *7 ("The ALJ's perfunctory analysis of [the plaintiff's] physical impairments at Step Three is beyond meaningful review.").

In fact, after the ALJ's discussion of Plaintiff's HIV at step two of the sequential evaluation process, the remainder of the ALJ's decision is completely devoid of any further reference to Plaintiff's HIV impairment. This calls into question whether the ALJ considered Plaintiff's HIV impairment in determining Plaintiff's RFC. *See Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *7 (E.D. Mich. Feb. 27, 2015) ("The ALJ's analysis of Plaintiff's mental impairments at Step Two, while otherwise thorough, does not provide the Court with a basis to infer that Plaintiff's mental impairments, either singly or in combination with Plaintiff's other impairments, generated no work-place restrictions or limitations.").

Here, Plaintiff specifically argues that the ALJ did not evaluate the side effects of Plaintiff's HIV medication in formulating Plaintiff's RFC. (Docket no. 13 at 14, 18.) The RFC assessment is the Commissioner's ultimate finding about the claimant's ability to perform work-related activities. Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5. It is defined as the most, not the least, the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ derives the RFC after considering the medical and other relevant evidence in the record. *Id.* He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence. SSR 96-8p, 1996 WL 374184, at *7. In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis. *Id.*

At the September 27, 2012 administrative hearing, Plaintiff testified that she is unable to work because of the side effects from her HIV medication, among other things. (TR 35.)

10

Plaintiff described those side effects as severe nausea, severe diarrhea, muscle aches, and severe migraines. (TR 36.) Plaintiff further explained that the diarrhea caused her to have accidents and usually required her to stay close to a restroom. (TR 36.) This is consistent with her testimony from the administrative hearing held two years prior, at which Plaintiff testified that she was having problems related to the side effects from her medications. (TR 561-62.) Plaintiff told ALJ Williams that those side effects were nausea, headaches, diarrhea, fogginess, dizziness, lightheadedness, and fatigue. (TR 562, 563, 564.) Plaintiff also listed the side of effects of her HIV medications, Atripla and Videx, in her disability reports as nausea, upset stomach, diarrhea, and bad dreams. (TR 234, 250.) Additionally, to demonstrate that she suffered from an inability to tolerate her HIV medications, Plaintiff directs the Court to two medical records from February and March of 2010. (Docket no. 13 at 21 (citing TR 482, 484).) On March 11, 2010, Plaintiff's treatment notes indicate that she had resumed antiretroviral therapy two weeks prior and was unable to tolerate it due to headaches and nausea. (TR 482.)

Defendant argues that the ALJ's RFC determination is supported by substantial evidence. (Docket no. 15 at 16-19.) Specifically, Defendant asserts that the record does not support Plaintiff's claims of intense side effects, such as edema and extreme fatigue. (*Id.* at 18 (citing TR 36, 564-66).) Defendant also points to medical evidence to demonstrate that Plaintiff had many normal examinations that do not document any medication side effects and that Plaintiff actually denied side effects on multiple occasions. (*Id.* (citing TR 275, 308, 546-48, 470, 474).) Defendant further asserts that Plaintiff has only cited to two medical records that document nausea as a side effect to her HIV medication. (*Id.* at 11-12.) Finally, Defendant claims that a close reading of the ALJ's decision demonstrates that the ALJ acknowledged Plaintiff's complaints but found no support for them in the record. (*Id.* at 18 (citing TR 18, 20).)

A close reading of the ALJ's decision, however, reveals that the ALJ makes no mention of the side effects from Plaintiff's HIV medication of which Plaintiff complains. The ALJ does address the side effects of Plaintiff's mental impairments and back pain in her decision. (TR 19-20.) She also generally states that Plaintiff's medical impairments could be reasonably expected to cause Plaintiff's alleged symptoms, but she concludes that Plaintiff's allegations are less than credible. (TR 18.) Nevertheless, there is simply no mention of the nausea, diarrhea, headaches, dizziness, or lightheadedness that Plaintiff suffers as a result of her HIV medications, or any discussion of how those side effects affect her work-related abilities. Moreover, the ALJ does not discuss those side effects in her credibility assessment as she was required to do under 20 CFR §§ 404.1529(c)(3), 416.929(c)(3). Most importantly, there is no reference to Plaintiff's HIV impairment anywhere in the ALJ's assessment of Plaintiff's RFC.

"Courts in this circuit have held that an ALJ's failure to adequately explain how an impairment affects an individual's RFC may constitute reversible error . . . even where substantial evidence supports the ALJ's ultimate disability decision." *Katona*, 2015 WL 871617, at *7 (citing cases). Indeed, it is the role of the ALJ, not the court, to weigh the evidence and resolve any conflicts therein. *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). The ALJ failed to do so here with regard to Plaintiff's HIV impairment. Hence, while there may be substantial evidence in the record to discredit the intensity or existence of side effects from Plaintiff's HIV medications or the symptoms of Plaintiff's HIV impairment, it does not cure the ALJ's failure to consider or discuss Plaintiff's HIV impairment beyond step two in the sequential evaluation process. This matter should be remanded for further consideration of Plaintiff's HIV impairment under steps two through five of the sequential evaluation process.

2.  *The ALJ's Step-Three Assessment of Plaintiff's Anemia*

Plaintiff also alleges that the ALJ failed to properly consider her severe impairments of chronic microcytic anemia and iron deficiency anemia under the Listings. (Docket no. 13 at 19-23.) At the time of the ALJ's decision, chronic anemia was addressed by Listing 7.02. To meet the criteria for Listing 7.02, a claimant's hematocrit levels must persist at thirty percent or less due to any cause with either (A) "Requirement of one or more blood transfusions on an average of at least once every 2 months;" or (B) "Evaluation of the resulting impairment under criteria for the affected body system." 20 C.F.R. pt. 404, subpt. P, app. 1 § 7.02 (effective June 13, 2012 to Apr. 4, 2013). Here, the ALJ noted that she considered Listing 7.02 at step three of the sequential evaluation process, but she found that none of Plaintiff's physical impairments met or medically equaled a listing because "[t]he medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (TR 15.)

Had the ALJ stopped there, the undersigned would recommend a sentence-four remand for a step-three determination of Plaintiff's anemia impairments. However, later in her opinion the ALJ discussed Plaintiff's anemia in specific enough terms to make it clear that Plaintiff did not meet the criteria of Listing 7.02. In fact, the ALJ acknowledged that the record revealed a long history of chronic microcytic anemia and iron deficiency anemia secondary to menorrhagia and/or uterine fibroids. (TR 18.) She cited specific evidence from the record that showed that through 2008, Plaintiff's hemoglobin levels ranged from 7.6 to over 8 g/dL and hematocrit levels above thirty percent. (TR 18.) She also recognized that in January 2009, Plaintiff presented to the hospital with hemoglobin levels between 6 and 7 with the reported need for a blood transfusion. (TR 18.) The ALJ noted that it was unclear whether Plaintiff received a blood

transfusion but that the evidence suggested that Plaintiff was discharged with only a prescription for ferrous sulfate. (TR 18.) The ALJ also stated that the record revealed no further evidence of Plaintiff's need for emergent care with regard to anemia, and particularly noted the lack of any further blood transfusions. (TR 18.) The ALJ further indicated that Plaintiff underwent a hysterectomy in June 2012, and by July 2012, Plaintiff was noted to be stable with reports of only hot flashes. (TR 19.) The ALJ then concluded that the record reveals no evidence of significant problems with regard to Plaintiff's anemia, or any indication that Plaintiff continues to experience significant problems with menorrhagia or uterine fibroids. (TR 19.)

The ALJ's discussion of the evidence pertaining to Plaintiff's anemia makes it clear that Plaintiff does not meet the criteria of Listing 7.02, and Plaintiff has not pointed to any evidence to the contrary. The ALJ's discussion is not so deficient as to preclude meaningful review and is supported by substantial evidence in the record. Plaintiff's Motion should be denied with regard to this issue.

          *3.    The ALJ's Assessment of Plaintiff's Mental RFC*

Plaintiff argues that "there is no mention in the RFC of the ALJ's findings that Plaintiff has moderate limitations in concentration, persistence, or pace." (Docket no. 13 at 18-19.) When the ALJ makes a finding that a claimant has moderate limitations in concentration, persistence or pace, the ALJ must account for such limitations in the claimant's RFC and in his hypothetical questions to the VE. *See Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009). Findings of moderate limitations in concentration, persistence, or pace do not necessarily preclude "simple, routine, unskilled work." *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844-BC, 2010 WL 3905375, at *2 (E.D. Mich. Sept. 30, 2010) (citations omitted). Such limitations may, however, result in the claimant being unable to meet quotas,

14

stay alert, or work at a consistent rate of speed. *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005).

The ALJ assessed Plaintiff's mental RFC as follows:

> The claimant is limited to simple, routine, one to three step tasks, in a low-stress environment, being defined as no quick decision making and no quick judgment on the job. The claimant should have no interaction with the public, and only occasional interaction with co-workers. The claimant requires a non-production pace setting.

(TR 17.) Plaintiff incorrectly argues that the "ALJ's non-descript limitations in her decision of 'non-production pace setting' utterly fails" to accurately portray her impairments. (Docket no. 13 at 19.) As noted above, a limitation of non-production-rate work is a common and adequate limitation for those persons who suffer from moderate difficulties in concentration, persistence, or pace. *See Edwards, supra.* Notably, Plaintiff does not explain what additional limitations the ALJ should have imposed. Plaintiff's argument fails in this regard.

### 4. The ALJ's Assessment of the Medical Opinions

Plaintiff argues that the ALJ "completely ignored the treating physician evidence of three doctors, Dr[.] Knysz, Dr. Head., and Dr. Rudolph, as well as the treating therapist Donna Townsley for that of [] non-treating physician [Dr. L. Imasa,] who saw claimant one time more than three years prior to her decision." (Docket no. 13 at 11-15.) She argues that the ALJ should have accorded these treating sources controlling weight under the treating physician rule. (*Id.*) Defendant argues that Drs. Knysz, Head, and Rudolph were not treating physicians and that the ALJ appropriately evaluated their opinions. (Docket no. 15 at 21-24.)

The Commissioner of Social Security has imposed "certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing 20 C.F.R. § 404.1502). Under the treating physician rule, the ALJ must "give a treating source's opinion

15

controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). If the ALJ does not give controlling weight to the treating source's opinion, he "must then balance the following factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2))). The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." *Id.* (citation omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (citation omitted).

Here, as Defendant points out, Drs. Knysz, Head, and Rudolph only saw Plaintiff once before opining Plaintiff's limitations; Plaintiff does not dispute this fact. Dr. Lisa Knysz, Psy.D., along with therapist Donna S. Townsley, LLPC, CACC, evaluated Plaintiff on April 21, 2010 (TR 415-16); Dr. John Head, DO performed a psychiatric evaluation of Plaintiff on June 13, 2012 (TR 543-44); and Dr. Terry L. Rudolph, Ph.D. conducted an independent psychological evaluation of Plaintiff on July 18, 2012 (TR 457-61). Therefore, Drs. Knysz, Head, and Rudolph were not Plaintiff's treating physicians, and their opinions are not entitled to controlling weight. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (holding that the treating physician doctrine did not apply to an alleged treating source who had only seen the plaintiff once). In

16

addition to her April 2010 evaluation of Plaintiff, Ms. Townsley treated Plaintiff three other times in February and March of 2010 and completed a Comprehensive Psychosocial Assessment of Plaintiff. (TR 438-43.) Nevertheless, Limited Licensed Professional Counselors are not "acceptable medical sources" under the Regulations, so Ms. Townsley's opinion is also not entitled to controlling weight under the treating physician rule. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).

The ALJ discussed the opinions of Drs. Knysz, Head, and Rudolph as well as Ms. Townsley and assigned them some weight. (TR 20, 21-22.) In doing so, the ALJ noted the extent of the Plaintiff's relationship with these medical providers, that Plaintiff did not return to Dr. Knysz and Ms. Townsely for treatment as they had recommended, and that the opined mental limitations of Drs. Head and Rudolph did not comport with the minimal amount of mental health care Plaintiff had either sought or received. (TR 21.) Accordingly, the ALJ did appropriately note, discuss, and explain why he did not fully credit the opinions of Drs. Knysz, Head, and Rudolph, and Ms. Townsley. Furthermore, Plaintiff's argument that the ALJ discounted the opinions of the aforementioned providers for that of Dr. Imasa fails, as the ALJ accorded the same amount of weight to Dr. Imasa's opinion as she did to those of Drs. Knysz, Head, and Rudolph and Ms. Townsley. (TR 21.)

### 5. *Plaintiff's Other Arguments*

To the extent Plaintiff sets forth other arguments in her brief, such as bias on the part of the ALJ, that the ALJ cherry picked the evidence, that the ALJ ignored the Appeals Council's remand order, that the ALJ should have sought further clarification from the medical sources, or any issues with the ALJ's RFC assessment other than those addressed above, such arguments are either completely undeveloped, incorrect, and/or made without performing a thorough review of

17

the ALJ's decision. For instance, Plaintiff argues that the ALJ never discusses Plaintiff's alleged limitations resulting from her neuropathy or the swelling of her legs. (Docket no. 13 at 17.) To the contrary, the ALJ devoted three paragraphs to this issue in her decision, in which she specifically cited to record evidence and analyzed Plaintiff's subjective complaints in assessing Plaintiff's physical RFC. (TR 19.) The Court is not obligated to address these perfunctory arguments, and it declines to do so. *See Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, at *14 (E.D. Mich. Jan. 25, 2013) (Grand, M.J.) (citation omitted).

## VI.   CONCLUSION

For the reasons stated herein, the Court should GRANT IN PART Plaintiff's Motion for Summary Judgment (docket no. 13) and DENY Defendant's Motion for Summary Judgment (docket no. 15). This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration of Plaintiff's HIV as an impairment under steps two through five of the sequential evaluation process.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir.

18

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 24, 2015         s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 24, 2015         s/ Lisa C. Bartlett
                               Case Manager